Sandra K. BLACKMAN,
Appellant–Cross–Respondent,

v.

Raymond Edward BLACKMAN,
Respondent–Cross–Appellant.

No. WD 40754.

Missouri Court of Appeals,
Western District.

Feb. 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1989.

James F. Ralls, Jr. of Quitmeier & Ralls, P.C., Kansas City, for appellant-cross-respondent.

John W. Dennis, Jr. of Paden, Welch, Martin & Albano, P.C., Independence, for respondent-cross-appellant.

Before MANFORD, P.J., and TURNAGE and LOWENSTEIN, JJ.

MANFORD, Presiding Judge.

This case arose when Sandra Blackman caused a garnishment in aid of execution to be issued on the wages of Raymond Blackman for unpaid child support. Raymond filed a Motion to Quash the Garnishment which the trial court sustained. Raymond's Motions for Order of Satisfaction of Judgment and Costs, and for Reimbursement of Child Support Paid After Emancipation were overruled by the trial court. This appeal by Sandra and cross-appeal by Raymond followed. The appeals have been consolidated.

The marriage of Sandra and Raymond was dissolved by the Circuit Court of Jackson County on January 7, 1974. Sandra was awarded custody of the two children, Bryan David and Jennifer Lyn, and the sum of $27.00 per week per child for child support. After Raymond became delinquent in his child support payments, Sandra filed a Motion to Modify and Application for Show Cause Order for contempt on the arrearage.

Prior to the hearing on Sandra's motion and application, the parties, through their attorneys, entered into a written stipulation. The stipulation, in pertinent part, states:

3. The parties agree that there has been a change of circumstances between the parties so substantial as to make the terms of the Court's Order unreasonable, and that it would be in the best interest of the minor children that the Order of the Court be modified as to child support.

4. The parties further agree that due to the minor children's increased needs and due to the increased earnings of the Respondent, that the child support Order should be increased from the present amount to the sum of Three Hundred Twenty Dollars ($320.00) per month for the support of BRYAN DAVID BLACKMAN and JENNIFER LYN BLACKMAN, with said payments to be made through the Court Administrator of the Jackson County Circuit Court as Trustee.

5. That the agreed monthly child support of Three Hundred Twenty Dollars ($320.00) shall be due and payable on the 15th day of each month, beginning January 15, 1982.

6. Respondent agrees that he shall provide major medical insurance benefits and life insurance benefits on both minor children until said minor children are twenty-one (21) or sooner emancipate from the home, and agrees to make all policy and claim numbers available to the Petitioner for the benefit of the children.

7. That the parties hereby agree that there is a disputed amount of back child support owed by the Respondent to the

Petitioner for the support of said minor children.

8. The Respondent agrees to pay the Petitioner as partial payment of the disputed back child support the sum of Four Thousand Dollars ($4,000.00) on February 22, 1982.

9. The parties agree that Petitioner will withhold execution on any of the remaining back child support which is allegedly owed by the Respondent to the Petitioner so long as Respondent is current on his child support payments on December 31, 1982, and on December 31 of each succeeding year.

10. The parties further agree that nothing in this agreement is to be interpreted as a total waiver by the Petitioner of any disputed back child support owed to her by the Respondent.

11. Respondent agrees to pay to Petitioner the sum of Eight Hundred Dollars ($800.00) toward her attorney fees regarding this action, and agrees to pay said attorney fees on or before June 1, 1982.

The stipulation was filed with the trial court.

On February 22, 1982, the trial court entered an order modifying the divorce decree. In its order, the court indicated that it had reviewed the written stipulation. The order modified the divorce decree to increase child support payments to the total sum of $320.00 and also stated:

IT IS FURTHER ORDERED By this Court that Respondent immediately pay to Petitioner the sum of Four Thousand Dollars ($4,000.00) as partial payment of the disputed back child support owed by the Respondent to the Petitioner and Petitioner shall herewith withhold execution on any of the remaining back child support which is owed by the Respondent to the Petitioner so long as Respondent is current on his child support payments on December 31, 1982, and on December 31 of each succeeding year thereafter.

IT IS FURTHER ORDERED by this Court that Respondent pay to Petitioner the sum of Eight Hundred Dollars ($800.00) as attorney fees in this action.

Said sum of Eight Hundred Dollars ($800.00) shall be paid by Respondent to the Petitioner on or before July 1, 1982.

Several years later, on December 23, 1987, Sandra filed a request for garnishment in aid of execution against the wages of Raymond for past due child support. Raymond filed a Motion to Quash Execution by Garnishment and Motions for Order of Satisfaction of Judgment and Costs, and for Reimbursement of Child Support Paid After Emancipation.

A hearing on the garnishment action and pending motions was held on May 16, 1988. Raymond testified that he was employed by the Brock Hotel Corporation in Dallas, Texas. A portion of his income was withheld pursuant to the garnishment served on the corporation's registered agent in St. Louis, Missouri. Raymond believed that the amount of the child support arrearage was between $8,000 and $9,000 in January of 1982. Pursuant to the written stipulation and order, Raymond paid Sandra $4,000 on the arrearage.

The parties stipulated at the hearing that their two children were emancipated. Bryan David was emancipated on August 20, 1985 when he entered military service. Jennifer Lyn was emancipated on February 16, 1986 when she was married. Sandra did not notify Raymond of the emancipations of the children and, consequently, Raymond paid approximately $4,800 in child support to Sandra after the children were emancipated. When Raymond learned of the emancipations, he stopped making payments and took action to terminate the trust with the Court Administrator's Office of the Circuit Court.

Raymond testified that in the summer of 1987, he had conversations with Sandra and asked her to sign satisfaction of judgment papers. He stated that Sandra said she was going to make an appointment with his attorney and sign the papers. Sandra had a few questions to ask, but Raymond did not know what the questions were. Sandra did not sign a satisfaction of judgment. Raymond stated that Sandra never told him "point blank, or words to that effect" that he owed her child support arrearages. She

did, however, seek legal advice and file the garnishment action.

Raymond had no documentation to show which payments he made. He had partially paid Sandra the $800 attorney fees previously ordered by the court. The parties stipulated that Raymond made all the child support payments ordered in the modified decree from January 15, 1982 to the time of the emancipation of the children on a current basis.

Terry Blackman, Raymond's wife at the time of the hearing, testified that she spoke with Sandra regarding the satisfaction of judgment papers. Terry said Sandra told her she would sign the papers and had made an appointment to see Raymond's attorney, but Sandra also told Terry she had some concerns and wanted to ask some questions before signing.

Sandra testified at the hearing, identifying an exhibit listing child support payments made by Raymond and those he missed. The exhibit, which was admitted into evidence and filed on appeal, shows total principal and interest due in the amount of $18,815.89 as of the hearing date. Sandra stated that Raymond never satisfied the arrearage that existed at the time of the stipulation, although he did make the partial payment of $4,000. The exhibit credited Raymond for payments made after the emancipation of the children.

Sandra recalled a conversation with Raymond who indicated there would be no further child support payments. Sandra wanted to discuss the past due child support in the amount of approximately $14,000, but Raymond told her she was overreacting. She also recalled conversations with Terry Blackman in which Sandra indicated that she never agreed that the arrearage should be forgiven, she just didn't have the money to pursue it.

At the close of the evidence, the trial court sustained Raymond's Motion to Quash Execution by Garnishment. All funds held pursuant to that execution were ordered released to Raymond. The trial court overruled Raymond's Motion for Order of Satisfaction of Judgment and Costs,

and for Reimbursement of Child Support Paid After Emancipation. Neither party requested findings of fact or conclusions of law, and none were made. The appeal and cross-appeal followed.

Sandra appeals from the trial court's order sustaining the Motion to Quash Execution by Garnishment. The scope of review in this court-tried action is subject to the provisions of Rule 73.01 and the construction of that rule in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); the decree or judgment will be sustained by an appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

■ At the heart of the dispute on appeal is the stipulation entered into by the parties. There is no question that an order for child support encompassed in a decree of dissolution and owed by one spouse to another becomes a judgment debt. *Penney v. White*, 594 S.W.2d 632, 635 (Mo.App. 1980). Sandra is not legally prevented from executing on a valid judgment debt for past due child support owed to her while her children were in her custody merely because in the course of time her children have been emancipated. Delay in demanding payment of child support will not preclude a claim for the full amount owed. *Foster v. Foster*, 703 S.W.2d 952, 953 (Mo.App.1986). However, like any other debt or judgment, a judgment debt for past due child support is subject to being settled or compromised by the parties and any such settlement or compromise, if supported by adequate consideration, will be respected and enforced by the courts. *Rodgers v. Rodgers*, 505 S.W.2d 138, 144 (Mo.App.1974). Such an accord and satisfaction is an affirmative defense which the proponent (Raymond in the instant case) has the burden to prove. *Penney*, 594 S.W.2d at 635.

■ Sandra's first point on appeal contends that the trial court erred in sustaining Raymond's Motion to Quash Execution By Garnishment because the stipulation

that Sandra would withhold execution so long as Raymond was current on payments thereafter was not supported by consideration and, thus, the parties never formed a valid contract of settlement which could be enforced by the court. In searching for consideration to support a contract to withhold execution on the judgment for past child support or to relieve Raymond of his liability for such a judgment, it is required, as in any contract of settlement and compromise, that there be either a benefit to the promisee or a detriment to the promisor. *Kennedy v. Kennedy,* 575 S.W.2d 833, 835 (Mo.App.1978). This court, in review, concludes that the trial court could have found from the evidence that there was sufficient consideration between the parties to constitute a binding settlement or compromise agreement. There was evidence that Raymond promised to pay Sandra the sum of $800 towards her attorney fees generated by the garnishment action. The fact that Raymond later paid part, but not all, of the $800 sum does not diminish the fact that the payment constitutes sufficient consideration to support a valid settlement agreement. Sandra's first point is ruled against her.

Sandra's second point on appeal contends that the trial court erred in quashing the garnishment because its order was not supported by substantial evidence in that Raymond, the movant attempting to quash the garnishment, failed to meet his burden of proof that the stipulation discharged him from liability on the judgment debt for past due child support and prevented Sandra from executing to collect the debt. At issue, therefore, is the interpretation of the stipulation which was entered into by the parties and received into evidence at the motion hearing. All fact issues upon which no specific findings were made shall be considered as having been found in accordance with the result reached. Rule 73.-01(a)(2). Implicit in the order quashing the garnishment is the finding that the stipulation compromised the judgment for past due child support and made it uncollectible so that Sandra is prevented from executing on the judgment.

It is clear from the language of the stipulation and testimony of the parties that Raymond owed Sandra back due child support at the time the stipulation was made, the exact amount being in dispute. Both paragraph 7 of the stipulation and the testimony of Raymond and Sandra acknowledge the back due child support. In paragraph 8, Raymond agreed to pay Sandra $4,000 as partial payment of the disputed back child support. Raymond testified that he paid Sandra the $4,000, and that the sum of $4,000 did not represent the entire amount of back due child support owed to her. Sandra testified likewise. Thus, paragraphs 7 and 8 are interpreted in similar ways by both parties.

Sandra and Raymond, however, have quite different interpretations of the combined effect of paragraphs 9 and 10 of the stipulation. To begin the analysis, the precise language of these paragraphs is again set forth:

9. The parties agree that Petitioner will withhold execution on any of the remaining back child support which is allegedly owed by the Respondent to the Petitioner so long as Respondent is current on his child support payments on December 31, 1982, and on December 31 of each succeeding year.

10. The parties further agree that nothing in this agreement is to be interpreted as a total waiver by the Petitioner of any disputed back child support owed to her by the Respondent.

Sandra interprets paragraphs 9 and 10 to allow her to now execute on the judgment debt for past due child support owed to her while the children were in her custody. Simply put, she intended to withhold execution while Raymond was current on his child support after the signing of the stipulation. She reads paragraph 9 as only a partial waiver of her right to execute in the sense that she was temporarily withholding or forestalling execution during the time Raymond was current on the $320 payments. Implied in paragraph 9, she argues, is the concept that the limitation placed upon her right to execute must cease at either the time the children are

emancipated or when Raymond is no longer making current child support payments. In either situation, Sandra urges the court to give effect to the plain meaning of paragraph 10 because she expressly included it as a term of the stipulation. The plain meaning of paragraph 10, she asserts, is that nothing in the agreement, including paragraph 9, is to be interpreted as a total waiver by her of any disputed back child support owed to her by Raymond. She calls attention to the fact that the stipulation does not contain a provision that Raymond is released or discharged of all obligations for back child support or that Sandra agrees that the judgment debt is satisfied. Sandra believes that her interpretation of the stipulation avoids any conflict in the meaning of paragraphs 9 and 10 and that Raymond's interpretation that she may not execute on the judgment leaves the non-waiver provisions of paragraph 10 without function or effect.

In contrast to Sandra, Raymond interprets the stipulation and order to prevent Sandra from executing on the judgment for past due child support. Raymond argues that paragraph 9 required him to keep current on his child support payments of $320 from December 31, 1982 and each succeeding year, and because he met the terms of paragraph 9 by staying current thereafter, he is now entitled to rely on Sandra's promise to withhold execution. He takes the position that the stipulation was intended to resolve all child support issues between the parties and that because he complied with the terms of paragraph 9, any dispute over the arrearage is concluded. As to the effect of paragraph 10, Raymond argues that paragraph 10 was not meaningless, even though Sandra cannot execute to collect the back child support. He believes that Sandra has already received a substantial benefit from paragraph 10 because it no doubt played an important role in securing the $4,000 partial payment on the arrearage, an increase in future child support payments, and payments on a timely basis. In sum, Raymond asserts that the compromise as evidenced by the written stipulation was not a total waiver of Sandra's right to execute, it was a waiver conditioned on Raymond's performance of the terms of paragraph 9. Finally, Raymond points to the modification order of the court, which combined the provision regarding the partial payment of $4,000 and the provisions of paragraph 9 into a single paragraph in the order, and argues that because he has also met both terms of the order, Sandra is foreclosed from executing on her judgment.

Under Missouri law, normal rules of contract construction apply to interpretation of settlement agreements. *Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir.1984). Crucial to the construction of the settlement agreement is the intent of the parties. *Id.* Whether a contract is ambiguous, is a question of law. *Id.* In determining whether a contract is ambiguous, the court must consider the whole instrument and the natural and ordinary meaning of the language. *Id.* Of course, the mere fact that the parties disagree on the subject does not render the document itself ambiguous. *Enyeart v. Shelter Mut. Ins. Co.*, 693 S.W.2d 120, 123 (Mo.App.1985). The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person. *Id.* The court's role is to determine the intention as manifested not by what the parties now say they intended, but by the document. *Press Machinery Corp., supra,* at 784. If the court determines that there is no ambiguity, then the intention of the parties and interpretation of the contract is for the court to determine, as garnered from the four corners of the document. *Id.* Where the contract is ambiguous, use of extrinsic evidence for interpretation is proper; the resolution of the ambiguity is a question of fact. *Id.*

In interpreting paragraphs 9 and 10 of the written stipulation, focus should first be placed upon the language of the paragraphs in question and upon the agreement as a whole. This court's review of the stipulation leads to the conclusion that the document is unambiguous. Regardless of

the above-mentioned disagreements of Sandra and Raymond as to how they now interpret the stipulation, paragraphs 9 and 10 are reasonably susceptible to only one interpretation. Giving the language its plain and ordinary meaning, the parties agree in paragraph 9 that Sandra will withhold execution on any of the remaining back child support owed by Raymond so long as he is current on his child support obligations each succeeding year. Again, giving the language its plain and ordinary meaning, the parties further agreed in paragraph 10 that nothing in the agreement is to be interpreted as a total waiver by Sandra of any disputed child support owed to her by Raymond. The intent of the parties not to totally waive Sandra's right to any of the disputed back child support is very apparent in paragraph 10. The combined effect of paragraphs 9 and 10, in light of the whole agreement, is that Sandra will withhold execution on any of the remaining child support (i.e., an amount which is in dispute less the $4,000 partial payment) during the time period in which Raymond is current on his child support payments, but that the temporary withholding of execution will not be interpreted as a total waiver of Sandra's right to back child support owed to her by Raymond. If the terms of a contract are clear and unambiguous, the contract will be enforced in accordance with its terms, and the construction of the parties, if at variance with the written terms, will not be followed. *Willman v. Beheler*, 499 S.W.2d 770, 775 (Mo. 1973). In this case, Raymond's interpretation (that the stipulation bars Sandra's recovery of the remaining back child support because he complied with the condition of making timely payments of $320) should not be followed.

The trial court did not have before it evidence of the circumstances prior to or contemporaneous with the making of the stipulation. The only evidence (other than the stipulation document) that might have led the trial court to a conclusion that the parties agreed that Sandra totally waived the right of execution to collect the past due child support was the testimony of Raymond and Terry Blackman regarding Sandra's willingness to speak with Raymond's attorney about signing satisfaction of judgment papers. Raymond presented this testimony as evidence of the intent of the parties at the time of the stipulation to determine that no more back child support was due or collectible from Raymond. The construction of a contract as evidenced by the acts or declarations of the parties may be considered by a court where the language of the contract is ambiguous, or there is a reasonable doubt as to its meaning, but not where it is plain and unambiguous. *Grapette Co. v. Grapette Bottling Co.*, 286 S.W.2d 34, 39 (Mo.App.1956). In this case, it was unnecessary to consider Sandra's acts or declarations made several years after the written stipulation was made because the language of the stipulation is unambiguous. Moreover, it can hardly be said that Sandra's willingness to make an appointment with Raymond's attorney sometime in the summer of 1986 or 1987 shows her understanding that the stipulation was intended to resolve all child support disputes in light of the evidence that Raymond and Terry each qualified their testimony, adding that Sandra said she had questions to ask before signing anything, and Sandra later sought legal counsel and filed her garnishment action.

Finally, it must be noted that there was no evidence that the increase in child support payments from $27.00 per week per child to $320.00 per month was designed to allow Sandra to recapture part of the arrearage owed by Raymond. There was evidence to the contrary in the stipulation that a change of circumstances between the parties was so substantial as to make the terms of the prior decree unreasonable and that in the best interest of the children the child support award would be modified due to the children's increased needs and the increased earnings of Raymond.

Sandra's second point is ruled in her favor. The trial court's order sustaining the Motion to Quash Execution by Garnishment cannot stand because there is no substantial evidence to support the order and that order erroneously applies the law of

enforcement of contracts in which there is no ambiguity.

■ Raymond's first point on his cross-appeal is that the trial court erred in denying his claim for reimbursement of the $4,800 of child support paid to Sandra after the emancipation of the children when Sandra failed to notify him of the emancipation because § 452.370.3, RSMo 1986 compels Sandra's liability for such overpayment. Section 452.370.3 states:

> 3. Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child. The custodial parent shall have the duty to notify the noncustodial parent of the child's emancipation and failing to do so the custodial parent shall be liable to the noncustodial parent for child support paid to the custodial parent following emancipation of a minor child.

Neither party disputes the facts that Sandra did not notify Raymond of the emancipation of the children and that Raymond paid approximately $4,800 in support after the children were emancipated.

In denying Raymond's motion for reimbursement of child support after emancipation, the trial court erred in its application of the law. The statute does not make liability for overpayment after emancipation a discretionary consideration because the use of the word "shall" indicates mandatory liability on the part of the noncustodial parent, unless otherwise agreed in writing or expressly provided in the divorce decree. This court rejects Sandra's arguments that the statute assumes the noncustodial parent is current on support obligations and, therefore, there is nothing improper in accepting continuing payments toward back due child support. The purpose of the statute is to make it absolute that, absent express provisions to the contrary in the divorce decree or separation agreement, a child support obligation ends upon the emancipation of the child. *Bushell v. Schepp*, 613 S.W.2d 689 (Mo.App. 1985). The parties did not agree in writing, nor did the decree provide, that Raymond had a duty to continue making payments of $320.00 per month until any and all past due child support was paid in full. The proper methods by which Sandra could collect past due child support include execution on the judgment or other statutory proceedings, including those in § 452.350, RSMo 1986.

■ Under a correct application of the law, Sandra is liable to Raymond for child support paid to her following the emancipation of the children. When there is more than one child and a judgment awards child support in one lump sum, the entire amount is required to be paid until the last child is emancipated and the obligor may not reduce the amount of child support pro-rata by his or her own action. *Holt v. Holt*, 662 S.W.2d 578, 580 (Mo.App.1983); *Gordon v. Ary*, 358 S.W.2d 81 (Mo.App. 1962). Hence, Raymond was obligated to pay child support to Sandra in the full amount of $320 per month until February 16, 1986, the date of emancipation of Jennifer Lyn. Sandra is liable to Raymond for all child support payments made after February 16, 1987. The exact amount of Sandra's liability for reimbursement must be determined by the trial court, which may order that Raymond receive credit against the judgment for past due child support rather than a cash reimbursement from Sandra.

Raymond's second point in his cross-appeal contends that the trial court erred in failing to enter an order of satisfaction of judgment and costs because, pursuant to Rule 74.56, Raymond was entitled to such an order. Raymond's second point is ruled against him. Rule 74.56 was not in effect at the time of the May 16, 1988 hearing. Further, the trial court did not err in overruling Raymond's motion as the order is supported by evidence that the judgment was not satisfied, specifically that full payment has not been made by Raymond for the disputed amount of back child support or the full $800.00 of attorney fees he was to pay Sandra.

Disposition of this matter is as follows:

That portion of the judgment overruling Raymond's Motion for Order of Satisfaction of Judgment is in all respects af-

firmed. That portion of the judgment overruling Raymond's Motion for Reimbursement of Child Support Paid After Emancipation is reversed. The determination of that issue shall be as directed *infra*. That portion of the judgment quashing the garnishment is reversed. The cause is remanded with the following directions:

The trial court shall immediately conduct a hearing to determine the following, and upon the completion of such, the trial court shall take the further action prescribed herein. The trial court shall determine from the evidence the total amount of delinquent child support owed by Raymond. The trial court shall determine the total amount of child support paid by Raymond subsequent to the emancipation of both children. The trial court shall apply the amount of child support paid by Raymond subsequent to the emancipation of both children as a credit or set-off to the amount of delinquent child support still due and owing and not direct the reimbursement of Raymond for said sum. The trial court shall determine the amount, if any, still due and owing on attorney's fees previously ordered to be paid by Raymond and, if any sum still is due on those fees, include that amount within its judgment to the favor of Sandra.

Nothing in this opinion shall be construed as a waiver or an estoppel to any subsequent aid in execution of judgment should such action be deemed otherwise appropriate in these proceedings.

All concur.